## In re EDSON.

### (District Court, D. Vermont. December 8, 1902.)

**1. NOTES—LIABILITY OF INDORSER.**

A note payable to the order of the maker, when indorsed by him, becomes a negotiable instrument; and a second indorser for accommodation becomes a party to such instrument, with the liabilities and immunities of an indorser of commercial paper, and his liability can only be fixed by protest and notice in due form.

**2. BANKRUPTCY—PROVABLE CLAIMS—NOTES UNLAWFULLY DISCOUNTED BY BANK CASHIER.**

Where the cashier of a national bank, without the knowledge and against the orders of the other officers, discounted for the maker notes far in excess of the amount which the bank could legally loan to one person, and beyond the ability of the maker or indorser of such notes to pay, the facts that he was prosecuted and sentenced to imprisonment for misapplying the funds of the bank, and the maker of the notes for aiding and assisting him, and that the receiver for the bank sued and recovered on the cashier's bond the amount of the penalty therein, do not affect the validity of the notes, nor the bank's ownership thereof; and the receiver may prove the same in bankruptcy against the estate of the indorser, where proper steps were taken to fix his liability thereon.

In Bankruptcy: On review of the allowance by the referee of the claim of D. D. Muir, receiver of the Merchants' National Bank, on 78 notes, amounting to $139,850, indorsed by the bankrupt.

Geo. L. Rice, for receiver.

Fred M. Butler and Thomas W. Moloney, for trustee.

Chas. L. Howe, for creditors.

WHEELER, District Judge. These notes were made by M. A. McClure, payable to himself or order, and indorsed by him in blank, and after him, for his accommodation, by the bankrupt; and were respectively discounted by the cashier of the bank without the knowledge and contrary to the directions of the other officers, and the avails went to McClure. The cashier, on a plea of guilty, has been convicted and sentenced for misapplying the funds of the bank by these transactions; and McClure, on a verdict of guilty, has been convicted and sentenced for aiding and assisting the cashier in these misapplications; and the receiver has recovered judgment in this court against the United States Fidelity & Guaranty Company for the penalty of a bond of indemnity of $20,000 against fraud and dishonesty of the cashier on account of these losses.

One principal question made is as to the relation of the bankrupt to the notes. As to this, it is considered that when the notes were made they were merely promises of the maker to himself, and amounted to no undertaking at all; but when they were indorsed by him they became negotiable instruments, payable to his indorsee, and when the bankrupt indorsed after him the bankrupt became a party to the notes, as an indorser, with the liabilities and immunities of an indorser of negotiable paper. His position as such entitled him to due notice of demand and nonpayment before his liability would become fixed; and, as to the notes of the nonpayment of which no notice was given, no liability as indorser became fixed

upon him. He cannot, in any view, be held liable for the money passed, for he received none. The notes on which no notice of nonpayment was given to the bankrupt are disallowed.

The transactions are said, in behalf of the trustee, to have been illegal; and so repudiated by the prosecution of the cashier and McClure, and, by pursuing the surety company for the misappropriations of the cashier, that there was either no liability of the bankrupt on any of the notes, or it was lost by the election of those remedies. There was no illegality about the conduct of the bank itself that would invalidate the notes. The excess of the limit allowed by the loans to one person would not have that effect. The prosecution of the cashier and of McClure was by the law officers of the United States, and not by or in behalf of the bank. The notes were all genuine, and were always in and the property of the bank, after they were taken by the cashier, although the other officers of the bank did not know it. The criminality of the cashier consisted in secretly letting the funds of the bank go on these notes to such an amount that there could be no hope of their payment, thereby resulting in a misapplication, and not in taking notes that were not genuine and valid. The criminality of McClure consisted in assisting the cashier in thus depleting the assets of the bank by these means. The loss of the bank was not through any infirmity of the paper, but on account of the irresponsibility of the maker and indorser. The bank did not recover against the surety company on the ground that the cashier took notes that were invalid, but that they were valueless. The bank did not set up invalidity then where it does validity now. Its position has been consistent all the while. The notes were always valid against the maker and indorser, before as well as after its general officers knew of them. It had nothing to do to validate them after discovery of them. It has had no election to make in respect to them, and has made none. The protested notes, which amount to $45,700, are allowed.

Report accepted, and allowance modified thereon to protested notes, amounting to $45,700.